IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| YONG YANG (A246 974 575), ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 6:26-cv-3114-MDH |
| ) | |
| KRISTI NOEM, *et. al.*, ) | |
| ) | |
| Respondents. ) | |

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner has been detained by the Department of Homeland Security ("DHS") and parole has been terminated without prior written notice. Pending is his Verified Petition for Writ of Habeas Corpus in which he argues federal statutes and the Due Process Clause require that he be released or granted a hearing. The Court agrees with Petitioner's statutory arguments, and on that basis, it concludes the Petition for Writ of Habeas Corpus should be **GRANTED**.

## BACKGROUND

Petitioner is a native and citizen of China. He has been present in the United States since May 2023. Petitioner has no criminal record. Petitioner's detention puts his family at risk without his support. Petitioner is currently in removal proceedings, however, no hearing before the Immigration Court has been scheduled. On February 10, 2026, he was taken into custody by ICE/ERO officials during his ICE check-in. Petitioner was detained while he was attending an ICE check in and had previously presented himself to a number of check-ins throughout the years he had been present in the United States. He is currently being held in Greene County Jail in Springfield, Missouri.

1

Petitioner brought this proceeding, seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241, against (1) the Secretary of DHS, (2) the Field Office Director for ICE Chicago, and (3), the Greene County Sheriff all in their official capacities.[1] He asserts his detention violates the Immigration Nationality Act (INA), and the Due Process Clause. Respondents argue that Petitioner is not entitled to be considered for release, and the Court resolves the parties' arguments below.

## DISCUSSION

### I. Exhaustion of Remedies

Petitioner would like to be considered for release on bond. Respondent argues this Court should dismiss the petition for lack of jurisdiction as Petitioner has failed to exhaust administrative remedies in not requesting a bond hearing with an IJ. However, any request for such consideration is futile because the DHS and the Executive Office of Immigration Review ("EOIR") have taken the position that Petitioner's detention is mandatory and bond is categorically not permitted.

### II. Jurisdiction

Respondents argue that three statutory provisions—8 U.S.C. §§ 1252(e)(3), 1252(g) and (b)(9) deprive this Court of jurisdiction to consider Petitioner's claims. The Court disagrees.

Section 1252(e)(3), entitled "Challenges on validity of the system," limits the scope of judicial review of "orders under Section 1225(b)(1)" and limits venue to the U.S. District Court for the District of Columbia. Petitioner is "not challenging the lawfulness of any particular statute, regulation, or written policy or procedure." Thus, § 1252(e)(3) does not strip this Court of

---

[1] Petitioner's Petition lists Jim Arnott as a party by virtue of his administration of the Greene County Jail in Springfield, Mo. The Court construes the proper party holding Petitioner in custody as the Department of Homeland Security through Immigration and Customs Enforcement. As DHS and ICE are utilizing the Greene County Jail to hold Petitioner and other detainees, the Court expects its ruling to apply to the Government and those aiding the Government regarding this specific case.

jurisdiction. *See Munoz Materano v. Arteta*, 2025 WL 2630826 (S.D.N.Y. Sept. 12, 2025), at *10. Further, this statute only bars jurisdiction based on those held under 8 U.S.C. § 1225. However, the Court finds that Petitioner is being held under 8 U.S.C. § 1226. Therefore, 8 U.S.C. § 1252(e)(3) does not deprive the Court of Jurisdiction.

Sections 1252(g) and (b)(9) apply narrowly to systemic challenges to regulations implementing expedited removal, review of an order of removal, the decision to seek removal, or the process by which removability will be determined, not to constitutional or statutory claims which precede and are collateral to that process, including, as relevant here, unlawful arrest or detention. *See Mata Velasquez v. Kurzdorfer*, No. 25-CV-493-LJV, 2025 U.S. Dist. LEXIS 135986, 2025 WL 1953796, at *7 (W.D.N.Y. July 16, 2025); see also *Hernandez-Cuevas v. Olson*, No. 4:25-cv-00830-BP, at 3 (W.D. Mo. Nov. 05, 2025) (citing 8 U.S.C. § 1252(b)(2)). Petitioner is not challenging any of these decisions or actions, so the above provisions do not deprive the Court of jurisdiction. This Court concludes it has jurisdiction over Petitioner's habeas petition.

### III. 8 U.S.C. §§1225 and 1226

Petitioner argues that he is being detained in violation of immigration laws because he is not subject to mandatory detention under 8 U.S.C. §1225(b)(2) and is instead subject to the discretionary detention provisions of 8 U.S.C. §1226(a), which requires that he be given a bond hearing. Respondents argue Petitioner is properly detained because he entered and has remained in the United States without inspection or admission and is therefore deemed an "applicant for admission" to whom such mandatory detention under 8 U.S.C. § 1225(b)(2)(A) applies and is ineligible for a custody redetermination hearing before an IJ. Considering the parties' arguments,

3

this Court joins the numerous federal courts that have rejected Respondent's interpretation of § 1225(b)(2).[2]

**Statutory Background**

Historically, noncitizens already residing in the country, such as Petitioner, were placed in standard removal proceedings and received bond hearings, unless their criminal histories rendered them ineligible under § 1226(c). *See Jennings v. Rodriguez,* 583 U.S. 281, 288 138 S.Ct. 830, 200 L.Ed.2d 122 (2018). Noncitizens who resided in the United States, but who had previously entered without inspection, were not deemed "arriving aliens" under § 1225(b), but were instead subject to § 1226(a). *See Jennings v. Rodriguez*, 583 U.S. 281, 287, 138 S.Ct. 830 ("In sum, U.S. immigration law authorizes the Government to detain certain aliens *seeking* admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the* country pending the outcome of removal proceedings under §§ 1226(a) and (c).") (emphasis added). In *Jennings*, the Court framed its discussion of §1225 as part of a process that "generally begins at the Nation's borders and ports of entry, where the Government must determine whether a [noncitizen] seeking to enter the country is admissible." 583 U.S. at 287, 138 S.Ct. 830. Then, when discussing §1226, *Jennings* describes it as governing "the process of arresting and detaining" noncitizens who are living "inside the United States" but "may still be removed," including noncitizens "who were inadmissible at the time of entry." *Id.* at 288, 138 S.Ct. 830.

---

[2] As of the date of this Order the Court is not aware of any appellate decisions from this Circuit. The Court however will highlight cases from District Courts in this Circuit as supporting the analysis in this case: *Barrajas v. Noem*, 2025 WL 2717650, at *3 (S.D. Iowa Sep. 23, 2025); *Giron Reyes v. Lyons*, 2025 WL 2712427, at *4 (N.D. Iowa Sept. 23, 2025); *Jose J.O.E. v. Bondi*, 2025 WL 2466670, at *6-7 (D. Minn. Aug. 27, 2025). The Court is aware that the Fifth Circuit issued a 2-1 decision from a 3-judge panel agreeing with the Respondents' position and rejecting Petitioner's arguments and hundreds of district courts across the country. *See Buenrostro-Mendez v. Bondi*, Case No. 25-20496 (5th Circuit, 02/06/2026). The Fifth Circuit's decision does not bind this Court.

The legislative history behind §1226 also tends to support Petitioner's argument that it governs noncitizens like himself that reside in the United States but previously entered without inspection. Before IIRIRA passed, the predecessor statute to §1226(a) governed deportation proceedings for all noncitizens arrested within the United States. *Rodriguez v. Bostock*, 779 F.Supp.3d 1239, 1247 (W.D. Wash. 2025) (citing 8 U.S.C. § 1252(a)(1) (1994) ("Pending a determination of deportability ... any [noncitizen] ... may, upon warrant of the Attorney General, be arrested and taken into custody."); *Hose v. I.N.S.*, 180 F.3d 992, 994 (9th Cir. 1999) ("A deportation hearing was the 'usual means of proceeding against a[ ] [noncitizen] already physically in the United States[.]' ")). This predecessor statute, like §1226(a), included discretionary release on bond. *Rodriguez*, 779 F.Supp.3d at 1260 (citing § 1252(a)(1) (1994) ("[A]ny such [noncitizen] taken into custody may, in the discretion of the Attorney General ... be continued in custody ... [or] be released under bond[.]")). Upon passing IIRIRA, Congress declared that the new §1226(a) "restates the current provisions in [the predecessor statute] regarding the authority of the Attorney General to arrest, detain, and release on bond a[ ] [noncitizen] who is not lawfully in the United States." *Rodriguez*, 779 F.Supp.3d at 1260 (citing H.R. Rep. No. 104-469, pt. 1, at 229; *see also* H.R. Rep. No. 104-828, at 210 (same)). Because noncitizens like Petitioner were entitled to discretionary detention under §1226(a)'s predecessor statute and Congress declared its scope unchanged by IIRIRA, this background supports Petitioner's position that he too is subject to discretionary detention under §1226(a).

Now, pursuant to the July 8, 2025, ICE memo entitled "Interim Guidance Regarding Detention Authority for Applicant for Admission," DHS and ICE deem any person who entered the United States without inspection as an "applicant for admission" under §1225(a), and therefore argue that they are subject to mandatory detention under §1225(b)(2)(A). The Court agrees with

5

Petitioner that a plain reading of §1226(a) and an analysis of statutory construction support the argument that §1226(a) applies to him rather than §1225(b)(2).

**Plain Language**

The plain language of §1225(b)(2) provides that "an alien *who is an applicant for admission*," shall be detained for a proceeding under §1229(a) of this title, "if the examining immigration officer determines that [the alien] *seeking admission* is not clearly and beyond a doubt entitled to be admitted." (emphasis added). Respondents' interpretation does not follow that plain language. Petitioner is not "seeking admission," he is already present in the U.S. *Martinez v. Hyde*, No. CV 25-11613-BEM, 2025 WL 2084238, at *2 (D. Mass. July 24, 2025) (explaining that for §1225(b)(2)(A) to apply, "an 'examining immigration officer' must determine that the individual is: (1) an 'applicant for admission'; (2) 'seeking admission'; and (3) not clearly and beyond doubt entitled to be admitted'"). One who is "seeking admission" is presently attempting to gain admission into the United States. *Id.* at *6 (discussing the plain meaning of "seeking"); *see also Lopez Benitez v. Francis*, No. 25-Civ-5937, 2025 WL 2371588, *7 (S.D.N.Y. Aug. 13, 2025) (interpreting "seeking admission" to mean a person who is actively "seeking" lawful entry. *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486 2025 WL 2496379, at *8 (E.D. Mich. Aug. 29, 2025) (" '[S]eeking admission' ... implies action – something that is currently occurring, and in this instance, would most logically occur at the border upon inspection."). Through its reading of the statutory definition of "applicant for admission" in § 1225(a)(1), the Government has completely ignored the "seeking admission" language. *Lopez Benitez*, 2025 WL 2371588, at *6 (explaining how the Government's preferred interpretation would simply strike the phrase "seeking admission" from the statute in violation of the rule of statutory interpretation prohibiting a construction that turns terms into surplusage). Noncitizens who are present in the country for years, are not actively

'seeking admission.'" *See Hernandez-Cuevas v. Olson*, No. 4:25-cv-00830-BP, at 3 (W.D. Mo. Nov. 05, 2025) (citing *Barrera v. Tindall*, 2025 WL 2690565, at *4 (W.D. Ky. Sept. 19, 2025) (quotations omitted)). Thus, as Petitioner has been in the United States for over 2 years, he is not "seeking admission" within the meaning of §1225(b)(2)(A).

### **Legislative Intent**

Further, Congress specified that the mandatory detention provision of § 1225(b)(2)(A) applies to those "seeking admission" and did not use the phrase "applicant for admission" that it defined previously in § 1225(a)(1). *See J.A.M. v. Streeval*, 2025 WL 3050094, at *2 (M.D. Ga. Nov. 1, 2025) ("Had Congress intended for this subsection to apply to all applicants for admission, it could have said so by simply replacing the phrase "an alien seeking admission" with the term "an applicant for admission;").

### **Statutory Construction**

Moreover, Respondents' interpretation is inconsistent with recent amendments to § 1226. In 2025, Congress passed the Laken Riley Act, which added § 1226(c)(1)(E) and requires detention of aliens who are inadmissible pursuant to § 1182(a)(6)(A), (D), or (E). *Hernandez-Cuevas* (W.D. Mo. Nov. 5, 2025) at 6. But under the Respondent's interpretation of these provisions, such aliens are already subject to mandatory detention under § 1225(b)(2)—which means the 2025 amendments to § 1226 have no purpose. *Id*. "[O]ne of the most basic interpretive canons [is] that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Id.* at 6 (citing *Corley v. United States*, 556 U.S. 303, 314 (2009) (cleaned up)). Moreover, "[w]hen Congress acts to amend a statute, we presume

7

it intends its amendment to have real and substantial effect." *Id.* at 6 (citing *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995)).

For these reasons, Respondents' interpretation of §1225 is not supported by the plain language of the text, statutory construction, or legislative intent. Thus, Petitioner is subject to the discretionary detention provisions of 8 U.S.C. §1226(a), not §1225.

A habeas court has "the power to order the conditional release of an individual unlawfully detained—though release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted." *Kashranov v. Jamison*, No. 2:25-CV-05555-JDW, 2025 WL 3188399, at *8 (E.D. Pa. Nov. 14, 2025) (citing *Boumediene v. Bush*, 553 U.S. 723, 779 (2008)); *see Yilmaz v. Warden of Fed. Det. Ctr. Philadelphia,* No. CV 25-6572, 2025 WL 3459484, at *3 (E.D. Pa. Dec. 2, 2025) (ruling Section 1226(a) predominated over § 1225(b)(2) and ordering immediate release and finding a bond hearing unnecessary when petitioner had no criminal history in the United States or any other country, and nothing in the record suggested that he posed a flight risk or is dangerous).

This Court finds immediate release is the appropriate remedy given the facts of this case. Petitioner has been in this country for two years. The Court is unaware of any criminal history. Petitioner has regularly attended his immigration proceedings. Nothing in the record suggests that he would be a flight risk or is dangerous.

### IV. The Due Process Clause

Petitioner alleges his indefinite detention without an individualized hearing violates the Due Process Clause of the Fifth Amendment. The Court's conclusion that §1226 applies is

8

Case 6:26-cv-03114-MDH    Document 7    Filed 03/02/26    Page 8 of 12

sufficient to remedy a Constitutional violation. There is no need to independently evaluate the compliance with the Due Process Clause under Respondents' detention policy.[3]

V. **<u>Temporary Restraining Order</u>**

Petitioner asks the Court to grant any other and further relief that this Court deems just and proper. Under similar circumstances, this Court has granted temporary injunctive relief to habeas petitioners to enjoin Respondents from relocating petitioners outside the jurisdiction of this Court. The Courts finds that such relief is just and proper in this case.

In analyzing a request for a TRO, the Court weighs: 1) probability movant will succeed on the merits; 2) threat of irreparable harm to the movant absent injunction; 3) balance between threatened harm to the movant and harm the injunction would inflict on other interested parties; and 4) the public interest. *Dataphase Sys., Inc. v. C L Syst., Inc.*, 640 F.2d 109, 114 (8th Cir.1981) (en banc). "No single factor is dispositive;" rather, the court must consider all factors to determine whether on balance they weigh towards granting the remedy. *Calvin Klein Cosmetics Corp. v. Lenox Labs.*, Inc., 815 F.2d 500, 503 (8th Cir. 1987).

The Court finds that a TRO in this case is appropriate. As discussed above, the Court has already found that movant will succeed on his Petition for Habeas Corpus by virtue of his INA argument that has been fully briefed by both parties. Further, the threat of irreparable harm to the movant absent injunction is high as any move from this district prior to a bond hearing would render this Order and Petitioner's right to a bond hearing as meaningless. As to the balance between the threatened harm to the movant and the harm the injunction would inflict on other interested

---

[3] The Court has significant initial concerns regarding constitutionality of Respondents' detention policy. However, it is the Court's position that the relief Petitioner seeks can be granted without an adjudication of the issue.

parties, the balance tips in favor of Petitioner. Respondents and other interested parties would not suffer by allowing Petitioner to have a bond hearing or await further immigration proceedings at home. Lastly, there is a public interest in allowing those who are detained pursuant to 8 U.S.C. § 1226 to enjoy the discretionary detention intended and determined by Congress. For these reasons, the Court finds a TRO is appropriate.

VI.     **Attorneys' Fees**

Petitioner requests an award of reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d). Pursuant to the EAJA, a court shall award to a prevailing party fees and other expenses incurred by that party in any civil action, brought by or against the United States, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust. 28 U.S.C § 2412(d)(1)(A). To be eligible for fees under the EAJA, a petitioner must submit an application within thirty days of final judgment, and the petitioner's net worth must be less than two million dollars at the time the civil action was filed. *See id.* §§ (d)(1)(B), (d)(2)(B)(i). The EAJA was enacted with the purpose of removing the financial disincentive for individuals challenging or defending against government action and encouraging challenges to improper government action as a means of helping formulate better public policy. *See, e.g., Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 163 (1990) ("[T]he specific purpose of the EAJA is to eliminate for the average person the financial disincentive to challenge unreasonable governmental actions." (citation omitted)); *Boudin v. Thomas*, 732 F.2d 1107, 1114 (2d Cir. 1984) ("The EAJA was passed partly to *encourage* challenges to improper actions by government agencies. The drafters perceived legal actions as helping to formulate public policy." (citations omitted)).

As explained throughout, the Court finds the position of the United States is not substantially justified. The manner in which the provisions have historically been interpreted, legislative intent, statutory construction, and the plain text of the statutes all support that the United States is not substantially justified in its novel interpretation of §1225. Thus, Petitioner may pursue an award of reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act.

## CONCLUSION

The Court concludes Petitioner is not subject to mandatory detention pursuant to §1225, and that he is entitled to a bond hearing pursuant to §1226. Accordingly, the Petition for Writ of Habeas Corpus is **GRANTED** as follows.

1. Petitioner is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2), and is instead subject to detention, if at all, pursuant to the discretionary provisions of 8 U.S.C. § 1226(a)(1).

2. Respondents are **ORDERED** to immediately release Petitioner from custody.

3. Respondents shall make accommodations available for Petitioner until such time as arrangements can be made for Petitioner to be returned to the location of arrest or other location agreed by the parties.

4. Petitioner shall promptly report to the Court any failure to comply with this Order by Respondent.

5. Petitioner may submit an application for fees under the EAJA within thirty days of the entry of final judgment.

6. It is **FURTHER ORDERED** that Respondents are enjoined from relocating Petitioner outside the jurisdiction of this Court prior to compliance with this Order.

**IT IS SO ORDERED**.

DATED: March 2, 2026

                                           */s/ Douglas Harpool*

**DOUGLAS HARPOOL**
**UNITED STATES DISTRICT JUDGE**